**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMALL JACKSON | |
| Appellant | No. 1599 WDA 2016 |

Appeal from the Judgment of Sentence June 27, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007067-2015

BEFORE: BOWES, RANSOM, JJ. and STEVENS P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 16, 2017**

Jamall Jackson appeals from the judgment of sentence of four to eight years imprisonment followed by two years probation. Judgment of sentence was imposed after a jury convicted him of possession of a firearm by a prohibited person. We affirm.

The jury's conviction rests upon the following evidence adduced by the Commonwealth. At approximately 1:30 p.m. on May 8, 2015, Pittsburgh Police received several 911 calls indicating that a firearm had been discharged multiple times near the intersection of Sacramento Avenue and Minton Street. The shooter was described as a bearded African-American man, who had fired shots at the feet of a woman just before they entered a red car, which the assailant was driving.

---

* Former Justice specially assigned to the Superior Court.

Police Officer Jeffrey Brock arrived at the scene. Officer Brock found no one and did not see blood, but he did retrieve eight shell casings from the sidewalk and a grassy area near the described intersection, as well as a cell phone owed by Jenna Cox, Appellant's girlfriend. While Officer Brock was investigating the area, a bearded African-American male drove a red Impala along Minton Street. Police unsuccessfully attempted to stop the vehicle in question, which was found parked about .2 miles from the scene of the shooting. The Impala was registered to Ms. Cox.

Several days later, Officer Brock called Ms. Cox, who was evasive and appeared frightened. On May 13, 2015, Detective Dawn Mercurio called Appelant, who agreed to come to the police station for an interview. After being given his *Miranda* warnings, Appellant made a statement, which the trial court described:

> [Appellant] told Detective Mercurio that he had been in a romantic relationship with Jenna Cox and that he had acted as a surrogate father for her five-year-old son. The natural father was incarcerated so he was acting in that individual's place. [Appellant] told Detective Mercurio that on the 8th of May, he was angry at Cox because he had learned that Cox and the natural father of her five-year-old had been talking behind his back and that the natural father had recently been released from incarceration. [Appellant] found out that Cox had taken her son's natural father to his son's school so that he could meet with the teachers and become more involved in his son's life. [Appellant] called Cox's cell phone and confirmed the fact that Cox was at her son's school with the child's natural father and he demanded that she leave him there and that she come pick him up at the 300 block of Minton Street.

When Cox arrived, [Appellant] got in the passenger seat and he was very angry and pulled out a gun from his right pocket and set it on his lap while he was talking with her. The [g]un was a nine-millimeter Ruger handgun. He was yelling at her[,] telling her that he did not appreciate how deceitful she was and he demanded to know where the natural father was living because he needed to die. [Cox] then got out of the car and was walking down the street when [Appellant] followed her, telling her to get back in the car. When she refused to listen to him, he fired several rounds at her feet and she took off running. [Appellant] then got into the driver's side of the vehicle and was pursuing her down Minton Street. He told her to get back into the car and if she did not, he was going to harm her. She got back into the car and then they drove away. [Appellant] then drove to his father's house in McKees Rocks so that he could dispose of the firearm. After giving the firearm to his father, they drove back to Minton Street to look for the cell phone that Cox had dropped. [Appellant] told Detective Mercurio that his father still had the gun and then agreed to call his father to tell him that they at least wanted to obtain the weapon. His father agreed and then they rode to his father's house and his father came out to the police car with the gun and magazine in a bag and gave it to Detective Mercurio.

Trial Court Opinion, 4/13/17, at 4-5. The Commonwealth also presented evidence that Appellant was previously convicted of three counts of robbery.

In response to this Commonwealth evidence, Appellant's father denied receiving the gun from Appellant and claimed that he found it in some bushes. Appellant also denied the entirety of the statement that he gave to Detective Mercurio.

The jury rejected Appellant's proof and convicted him of the firearm's offense. After imposition of the above-described sentence, Appellant filed a post-trial motion, which included a challenge to the weight of the evidence.

- 3 -

This appeal followed denial of that motion. Appellant presents these issues for our review:

I. Whether the evidence was insufficient as a matter of law to establish Appellant as possessing a firearm beyond a reasonable doubt, since no witness testified that Appellant was ever in actual possession of a firearm, no scientific or circumstantial evidence indicated Appellant possessed the firearm, and the only evidence regarding Appellant's possession of a firearm were the hearsay statements of Jena Cox introduced by Detective Mercurio as if these statements were made by Appellant during his alleged confession that was neither written or recorded.

II. Whether Appellant's conviction of person not to possess a firearm was against the weight of the evidence; where no witness testified that Appellant was in possession of the firearm; where no scientific or circumstantial evidence indicated Appellant possessed the firearm; where the only evidence regarding the element of possession of the firearm was hearsay testimony of an alleged confession made by Appellant; where Appellant's confession was not recorded, reduced to writing, or adopted by Appellant in any part.

III. Whether trial counsel was ineffective for failing to prepare or demonstrate a sufficient understanding of the evidence and ultimately failing to object to the hearsay statements of Jena Cox introduced by Detective Mercurio as the Appellant's alleged confession.

IV. Whether the trial court's denial of appellant's motion for mistrial was an abuse of discretion where Appellant sought to terminate trial counsel's representation for the aforementioned ineffective assistance of counsel.

Appellant's brief at 5.

Appellant first challenges the sufficiency of the evidence supporting his conviction. Since a challenge to the sufficiency of the evidence raises a

question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Giron***, 155 A.3d 635, 638 (Pa.Super. 2017).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fitzpatrick***, 159 A.3d 562, 567 (Pa.Super. 2017) (citation omitted).

Appellant was convicted of 18 Pa.C.S. § 6105(a)(1), persons not to possess, use, manufacture, control, sell or transfer firearms, which states:

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1). One of the enumerated offenses is robbery. 18 Pa.C.S. § 6105(b). Thus, § 6105(a)(1) essentially contains two elements, that the defendant (1) possessed a firearm and (2) was convicted of an enumerated offense. *See Commonwealth v. Jemison*, 98 A.3d 1254 (Pa. 2014); *Commonwealth v. Antidormi*, 84 A.3d 736 (Pa.Super. 2014).

Herein, Appellant does not contest that he was convicted of an enumerated offense, and the Commonwealth established that he had been convicted of three counts of robbery prior to the incident at issue herein. On appeal, Appellant challenges that the Commonwealth proved, beyond a reasonable doubt, that he was in possession of a firearm. Although Appellant confessed to Detective Mercurio that he had a gun in possession on the day in question, Appellant suggests that his confession must be discounted since it was not written or recorded, even though it could have been. As clearly articulated above, the jury assesses the credibility of the trial witnesses. Detective Mercurio outlined the contents of Appellant's statement, and the jury was free to credit her testimony, regardless of whether Appellant's statement was written or recorded. Hence, we reject Appellant's first position.

Appellant next raises a challenge to the weight of the evidence, which is identical to his claim that there was insufficient evidence to support the verdict. He suggests that the jury should not have credited Detective Mercurio's report of the contents of his confession since he did not sign a

written confession and since it was not recorded. Our standard of review in this context is settled:

> In assessing a claim that the verdict was against the weight of the evidence, this Court will not substitute its judgment for that of the factfinder, which is free to assess the credibility of witnesses and to believe all, part, or none of the evidence presented. *Commonwealth v. DeJesus*, 580 Pa. 303, 860 A.2d 102 (2004); *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97, 101 (1995) ("An appellate court is barred from substituting its judgment for that of the finder of fact." (citing *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203, 1206 (1982)).
>
> > "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted). "Moreover, where the trial court has ruled on the **weight** claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003). "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the **weight** claim." *Id.*

*Commonwealth v. Trippett*, 932 A.2d 188, 198 (Pa. Super. 2007).

*Commonwealth v. Fortson*, 165 A.3d 10, 16 (Pa.Super. 2017).

Additionally, resolution of a weight-of-the-evidence challenge is assigned to the discretion of the trial court so that this Court does not review such an allegation in the first instance. *Commonwealth v. Storey*, 167

A.3d 750, 761 (Pa.Super. 2017). Instead, we consider whether the trial court abused the discretion in rejecting a contention that the verdict is against the weight of the evidence. *Id*. The trial court should credit an averment that the verdict is against the weight of evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. *Id*.

In this case, the jury was permitted to accept Detective Mercurio's testimony about the statement that Appellant gave to her. We conclude that the trial court did not abuse its discretion in concluding that Appellant's conviction was not so against the weight of the evidence as to shock the trial court's sense of justice. We therefore reject Appellant's second position.

Appellant's third issue concerns trial counsel's ineffectiveness. A claim of ineffective assistance of counsel may not be addressed on direct appeal, but must be deferred to collateral review. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). Hence, we decline to examine Appellant's third issue, which he can raise in a PCRA proceeding.

Appellant's final claimed error is that the trial court should have granted counsel's request for a mistrial, which counsel sought on the basis that his relationship with Appellant had deteriorated to the point that counsel could no longer effectively represent Appellant. In the criminal context, a mistrial is declared in order to "to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial." *Commonwealth v. Cole*, 167 A.3d 49, 73

(Pa.Super. 2017). A mistrial is warranted when the trial process is tainted, depriving the defendant of a fair trial. *Id.* The trial court "is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial." *Id*. Mistrial can be granted only when "misconduct or prejudicial error actually occurred," and, if it did, a new trial is needed to avoid the resulting prejudice. *Id*.

In this case, there was no prejudicial element introduced at trial. There was no improper evidence or remarks presented to the jury. Appellant's mistrial request was predicated solely upon the manner in which counsel was conducting trial. Simply put, there was no ground upon which a mistrial could have been granted because there was no trial error. However, as noted, claims of ineffective assistance of counsel must be deferred to collateral review. Appellant is free to present any issue involving how he was represented at trial in a timely collateral proceeding. Hence, we reject this final claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/16/2017