J-S16021-17

2017 PA Super 162

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAIKWEON K. FORTSON | : | |
| | : | |
| Appellant | : | No. 911 WDA 2016 |

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0016615-2014

BEFORE:   MOULTON, J., RANSOM, J., and PLATT, J.[*]

OPINION BY RANSOM, J.:                    **FILED MAY 26, 2017**

Appellant, Daikweon Fortson, appeals from the judgment of sentence of thirteen to twenty-six years of incarceration imposed January 28, 2016, following a bench trial resulting in his conviction for attempted homicide, robbery, aggravated assault, possession of a firearm by a minor, and possession of a weapon.[1]  We affirm.

The relevant facts and procedural history are as follows.  Appellant and Karron Tucker showed up at C.J. Clawson's house to buy marijuana from him.  **See** Notes of Testimony (N.T.), 11/2/2015, at 32.  C.J. was hanging out with Tyler Grant at the time.  **See id.**  C.J. did not have enough

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 3701(a)(1)(iii), 2702(a)(1), 6110.1(a), and 907(b), respectively.

marijuana to sell them. *Id.* at 25, 33. C.J. contacted Gino Roland, Jr.[2] via twitter to inquire about purchasing additional marijuana. *Id.* at 26, 33. Gino agreed to sell C.J. one half ounce of marijuana. *Id.* at 116, 126. C.J. agreed to meet Gino at Carl Schmidt's house. *See id.*

C.J. brought Appellant, Karron, and Tyler when he went to meet Gino at Carl's house. *Id.* at 26. When the four of them arrived, C.J. remained on the porch while Gino and Carl walked into the alleyway on the side of the house with Appellant, Karron, and Tyler. *Id.* at 27, 57. Either Appellant or Karron took the marijuana without paying Gino. *Id.* at 29, 58, 134. Appellant and Karron tried to run away, but Gino and Carl chased them and caught up. *Id.* at 29-30. A fight ensued. *Id.* at 30. Gino began wrestling with Karron. *Id.* at 46, 59-60, 132. Gino knocked Karron down onto the ground and was standing over top of him. *Id.* at 132. Appellant pulled a gun on Gino. *Id.* at 30-31, 59, 131-32. At the time of the incident, however, Appellant was ineligible to carry a concealed firearm because of his age. *Id.* at 111.

Appellant aimed the gun at Gino's face, and Gino heard a click, but it did not fire. *Id.* at 31, 136-138. Gino tried to wrestle Appellant for the gun. *Id.* at 60. Appellant got free, pulled the trigger, and shot Gino in the back from five feet away. *Id.* at 31, 60-61. Carl remained to help Gino as the

_____

[2] Trial court opinion refers to Gino Roland as "Roldan."

others fled.  *Id.* at 53.  Officer Jones found Gino lying on the sidewalk bleeding profusely.  *Id.* at 11-12, 11-15.  Gino suffered two fractured ribs, two fractured vertebrae, and two collapsed lungs.  *Id.* at 121-123.

Following a non-jury trial, Appellant was found guilty and sentenced as described above.[3]  Appellant filed a post-sentence motion, which the court denied on May 31, 2016.  Appellant timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement.  The court filed a responsive opinion.

On appeal, Appellant raises the following issues:

> I.    Whether the Commonwealth produced sufficient evidence to sustain a guilty verdict for criminal attempt – criminal homicide?
>
> II.   Whether the verdict is against the weight of the evidence presented?
>
> III.  Whether Pennsylvania's sentencing guidelines as applied to a juvenile defendant violated the proportionality requirement of the Eighth Amendment?

Appellant's Br. at 3.

First, Appellant challenges the sufficiency of the evidence offered to prove criminal attempt to commit murder.  In reviewing the sufficiency of the evidence, our standard of review is as follows:

---

[3] At the time of the underlying offenses, Appellant was fifteen years old. Appellant was automatically certified to adult criminal court.  Thereafter, he filed a motion for decertification.  The trial court record does not disclose disposition on the motion.  Appellant has not raised the issue of his certification for trial as an adult on appeal.

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011).

"A person commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime." 18 Pa.C.S. § 901(a).

> "For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill." *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa.Super.2004). Therefore, "[i]f a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder." *In re R.D.*, 44 A.3d 657, 678 (Pa.Super.2012). "The Commonwealth may establish the mens rea required for first-degree murder, specific intent to kill, solely from circumstantial evidence." *Id.* Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1034 (Pa. 2007) ("a specific intent to kill may be inferred

from the use of a deadly weapon on a vital part of the victim's body.").

**Commonwealth v. Tucker**, 143 A.3d 955, 964 (Pa. Super. 2016), *appeal denied*, 143 A.3d 955 (Pa. 2017).

Here, Appellant argues that the Commonwealth failed to present evidence to prove that he possessed the specific intent to kill, *i.e.*, to commit a "willful, deliberate, and premeditated killing." Appellant's Br. at 12 (quoting 18 Pa.C.S. § 2502). Appellant asserts that the Commonwealth provided no evidence of prior interactions between the victim and Appellant. He asserts that he did not initiate the physical altercation and maintains that he was trying to escape when he shot the victim.

As previously noted, a specific intent to kill may be proven by circumstantial evidence. Further, in the trial of a person for attempting to commit murder, "the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense." 18 Pa.C.S. § 6104.

Appellant argues that he did not initiate the physical altercation, which appears to assert that he acted in self-defense rather than pre-meditated the killing. However, there is no evidence that he presented this theory in pre-trial motions or as a defense at trial. Further, his argument does not articulate a challenge that the evidence was insufficient to infer a specific intent to kill. Thus, his argument is misplaced as it is more appropriately directed to the weight of the evidence presented at trial, as discussed *infra*.

Here, the evidence presented established that Appellant attempted to shoot the victim in the face, but the gun failed to fire. Appellant tried to shoot the Victim again. As the trial court explained, he "took deliberate aim at the back of a man on the ground and fired a bullet into his spine." TCO, 8/26/2016, at 10. Appellant shot the victim at a close range, nearly killing him.[4] The jury may infer specific intent to commit murder from the fact that Appellant took multiple attempts to shoot the Victim in vital parts of his body. *Rega*, 933 A.2d at 1009; *Cousar*, 928 A.2d at 1034; *see also Commonwealth v. Harris*, 817 A.2d 1033, 1039 (Pa. 2002). In addition, Appellant was illegally armed with a firearm at the time of the incident, which provides further evidence of intent. *See* 18 Pa.C.S. § 6104. Based on the totality of the circumstances, the evidence was sufficient for the jury to infer a specific intent to murder the victim beyond a reasonable doubt. *Tucker*, 143 A.3d at 964-65.

Second, Appellant contends that the verdict was against the weight of the evidence. Appellant reasserts that he was trying to escape from the victim, rather than kill him. Further, Appellant claims that the factfinder relied on contradictory and inconsistent testimony. Appellant argues that inconsistencies in the witness testimony made it "equally if not more likely

---

[4] The bullet fractured two of the victim's ribs propelling shards of bone into his left lung causing extensive lacerations and hemorrhaging. *See* N.T., 1/28/2016, at 6. The victim suffered two fractured ribs, two collapsed lungs, and a fractured vertebrae from the bullet path. *Id.*

that [Appellant] was attempting to effectuate his escape from the incident when he shot the victim, and was not trying to kill him." Appellant's Br. at 13-14.

In assessing a claim that the verdict was against the weight of the evidence, this Court will not substitute its judgment for that of the factfinder, which is free to assess the credibility of witnesses and to believe all, part, or none of the evidence presented. *Commonwealth v. DeJesus*, 860 A.2d 102 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("[A]n appellate court is barred from substituting its judgment for that of the finder of fact." (citing *Commonwealth v. Pronkoski*, 445 A.2d 1203, 1206 (1982)).

> "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted). "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

*Commonwealth v. Trippett*, 932 A.2d 188, 198 (Pa. Super. 2007). Further, this Court will not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Giordano*, 121 A.3d 998, 1007 (Pa. Super. 2015).

Appellant's argument fails to reveal any inconsistencies in testimony that would affect the overall outcome of the case, and his contention that the trial court incorrectly weighed his own testimony is merely self-serving. Here, multiple witnesses established that Appellant brandished a firearm, without a license to carry it, and, while standing a short distance away from the victim, shot the victim in the back. In light of this ample evidence, the court's verdict certainly did not shock one's sense of justice. *Giordano*, 121 A.3d at 1007. Thus, the trial court did not commit a palpable abuse of discretion in denying Appellant's weight claim. *Trippett*, 932 A.2d at 198.

Next, Appellant contends that the Pennsylvania sentencing guidelines violate the proportionality requirement of the Eighth Amendment of the U.S. Constitution. Appellant's Br. at 17-20; 42 Pa.C.S. § 2154 (directing the sentencing commission to adopt guidelines); 204 Pa. Code § 303.11 (referencing the purpose of the guidelines).[5] However, Appellant asserts that the guidelines' primary focus on retribution does not adequately take into account the evolution of recent United States Supreme Court precedent recognizing the diminished culpability for juveniles. Appellant's Br. at 20 (suggesting that the only safeguard against imposition of an unconstitutional sentence is the trial court's discretion). Thus, Appellant concludes that the

---

[5] Although Appellant cites a single section of the guidelines, his challenge applies to the guidelines in their entirety. *See* 204 Pa. Code §§ 303.1- .18(c).

sentence imposed upon him was unconstitutional.

Duly enacted legislation carries a strong presumption of constitutionality. *Commonwealth v. Turner*, 80 A.3d 754, 759 (Pa. 2013). The General Assembly does "not intend to violate the constitution of the United States or of this Commonwealth when promulgating legislation." *Commonwealth v. Baker*, 78 A.3d 1044, 1050 (Pa. 2013) (quoting 1 Pa.C.S. § 1922(3)).

> In conducting our review, we are guided by the principle that acts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed. Thus, a statute will not be found unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality.

*Commonwealth v. Neiman*, 84 A.3d 603, 611 (Pa. 2013) (internal quotation marks and citations omitted). "As the constitutionality of a statute presents a pure question of law, our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Lawrence*, 99 A.3d 116, 118 (Pa. Super. 2014) (citing *Turner*, *supra*).

> The Eighth Amendment to the Federal Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." 6 U.S. CONST. amend. VIII. The Eighth Amendment is unique in constitutional jurisprudence because it "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality). "[T]he Eighth Amendment's protection against excessive or cruel and unusual punishments flows from the basic 'precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense.'" *Kennedy v.*

> *Louisiana*, 554 U.S. 407, 419 (2008), quoting *Weems v. United States*, 217 U.S. 349, 367 (1910). "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Hall v. Florida*, ___ U.S. ___, 134 S.Ct. 1986, 1992 (2014) (citation omitted).

*Lawrence*, 99 A.3d at 119 (parallel citations omitted).

It is settled that juvenile defendants are less culpable for criminal behavior than adults. *Roper v. Simmons*, 125 S. Ct. 1183, 1195 (2005) (recognizing juveniles' lack of maturity, susceptibility to negative influences, and the transitory nature of their personality traits). The recognition of this diminished culpability has led the United States Supreme Court to conclude that certain categories of punishments are violative of the Eighth Amendment. For example, in *Roper*, the Court abolished the death penalty for juvenile offenders under eighteen. *Id.* at 1200. Thereafter, the Court prohibited imposition of life without parole upon juveniles for non-homicide crimes. *Graham v. Florida*, 130 S. Ct. 2011, 2030 (2010) (instructing that States afford juvenile defendants convicted of non-homicide crimes "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"). Most recently, the Supreme Court prohibited mandatory life without parole sentences for juveniles convicted of homicide. *Miller v. Alabama*, 132 S. Ct. 2455, 2646 (2012).

However, this Court has declined to expand the categories of punishment prohibited based upon the diminished culpability of youth. *See Lawrence*, 99 A.3d at 122 (rejecting an argument to expand the categorical

prohibition recognized in **Miller** to the sentencing scheme set forth in 18 Pa.C.S. § 1102, which mandates a minimum thirty-five year sentence for juveniles convicted of first-degree murder). Certainly here, where the sentence imposed – thirteen to twenty-six years - is far less severe than those considered by the Supreme Court or by this Court, no such categorical prohibition is warranted.

Moreover, considering that this Court has determined previously that sentences far more severe than that imposed upon Appellant provide a meaningful opportunity for release, the Supreme Court's general admonition, articulated in **Graham**, is not at issue here. **Id.** at 124 (affirming a forty-five year to life sentence for juvenile convicted of first-degree murder); **see also Commonwealth v. Brooker**, 103 A.3d 325, 339-40 (Pa. Super. 2014) (concluding that a thirty-five year sentence for first-degree murder was not equivalent to a life sentence, provided a meaningful opportunity for release, and therefore did not violate the Eighth Amendment). Thus, despite diminished culpability, it remains constitutional that juveniles convicted of serious crimes may receive significant periods of incarceration. **Lawrence**; **Brooker**.

Finally, turning to the guidelines, we note the following. In directing the Sentencing Commission to adopt guidelines, the General Assembly required that sentencing recommendations be "consistent with the protection of the public, the gravity of the offense as it relates to the impact

on the life of the victim and the community and the rehabilitative needs of the offender." 42 Pa.C.S. § 2154(a). Section 303.11(a) reflects these requirements, defining the purpose of the guidelines in relevant part:

> The sentencing guidelines provide sanctions proportionate to the severity of the crime and the severity of the offender's prior conviction record. This establishes a sentencing system with a primary focus on retribution, but one in which the recommendations allow for the fulfillment of other sentencing purposes including rehabilitation, deterrence, and incapacitation.

204 Pa.Code § 303.11(a).

The guidelines' express declaration that sentences must be proportionate to the severity of the crime and that rehabilitation of the offender is a fundamental purpose undermines Appellant's singular focus on the retributive nature of criminal sanctions. Thus, in our view, Appellant's argument is not persuasive.

Moreover, the guidelines set forth a framework, to be considered by the sentencing court in fashioning an individualized sentence. *See* *Commonwealth v. Walls*, 926 A.2d 957, 962-963 (Pa. 2007); *see also* 42 Pa.C.S. §§ 2154(a), 9721; *see generally* 204 Pa.Code §§ 303.1-.18(c). To be clear, while the court must consider the guidelines, the court is also afforded broad discretion in sentencing matters, as it is in the best position to evaluate the individual circumstances before it. *Walls*, 926 A.2d at 961. Thus, the guidelines "merely inform the sentencing decision." *Id.* at 962.

Appellant suggests that this broad discretion is insufficient to protect the juvenile defendant. We disagree. The advisory nature of the guidelines

- 12 -

ensures, as constitutionally required, that the diminished culpability of juvenile defendants is properly considered. In exercising its discretion, "[t]he sentencing court must impose a sentence that is appropriate in light of the individualized facts of the underlying incident." ***Commonwealth v. Johnson***, 873 A.2d 704, 709 (Pa. Super. 2005); ***see also Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (2005), *cert. denied*, 125 S. Ct. 2984 (2005). The court must consider aggravating and mitigating circumstances. "In particular, the court should refer to the defendant's prior criminal record, *his age*, personal characteristics and his potential for rehabilitation." ***Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa. Super. 2013) (quoting ***Griffin*** 804 A.2d at 10) (emphasis added), *appeal denied*, 76 A.3d 538 (Pa. 2013); ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010)).

For these reasons, we conclude that the sentencing guidelines, as applied to Appellant, do not violate the proportionality requirement of the Eighth Amendment. Accordingly, no relief is due.[6]

Judgment of sentence affirmed.

---

[6] To the extent Appellant suggests that the court did not adequately account for his youth and his "minimal" prior interactions with the juvenile justice system, such a claim is more appropriately formulated as a challenge to discretionary aspects of his sentence, i.e., that the court failed to consider youthfulness as a mitigating factor. Appellant has not preserved such a claim, and it is therefore waived.

Judge Moulton joins.

Judge Platt concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/26/2017