J-S21015-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT ALLEN SEWELL | : | |
| | : | |
| Appellant | : | No. 1010 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 7, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000184-2018

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                          FILED MAY 22, 2020

Robert Allen Sewell appeals from the judgment of sentence, entered in
the Court of Common Pleas of Allegheny County, following his jury convictions
for aggravated assault[1] and recklessly endangering another person (REAP).[2]
Upon review, we affirm.

The trial court set forth the facts of the case as follows:

In December of 2017 [Sewell] and Desiree Moore were involved
in a romantic relationship.  On December 22, 2017, the two were
shopping and eventually went to [Sewell's mother's home] in
Wilkinsburg, where they began drinking and playing cards.
Moore's one-year old daughter was with her and asleep on a couch
as the three drank and played cards.  During the evening[,
Sewell's] sister (Daysha) and her friend came to the home.  The
friend gave Moore a hug[,] which upset [Sewell].  [Sewell]
accused Moore of "having something going on" with the friend.
Moore informed [Sewell] that she was involved with him[, i.e.,

_____

[1] 18 Pa.C.S.A. § 2702(a)(4).

[2] 18 Pa.C.S.A. § 2705.

Sewell,] and that there was nothing going on between her and his sister's friend.

When [Sewell's] sister and her friend left the home, [Sewell] went upstairs and retrieved a knife. [Sewell] then attacked Moore with the knife as she sat at the table. Moore was cut on her hands during this initial phase of the assault. Moore tried to escape, but [Sewell] continued the attack throughout the living room[,] cutting her on her neck, back, and forehead. Moore estimated [Sewell] swung the knife at her twenty times, cutting her seven separate times. Moore was able to escape to the basement and exit through a back[ ]door.

Moore ran to [the home of a] neighbor[,] who called the medics and police. Moore was transported to Presbyterian Hospital for treatment. Before transport, Moore described what [had occurred] to Sergeant [John Snyder] of the Wilkinsburg Police Department. [Sewell] was arrested on scene and police located the knife used by [Sewell] in the kitchen of the home.

The deep laceration to Moore's forehead resulted in a permanent and prominent scar across her forehead, as well as [recurring] headaches. The medical records corroborated Moore's account of the attack.

Trial Court Opinion, 10/23/19, at 4-5 (internal citations and footnote omitted).

A jury trial was held on January 17, 2019. Following trial, the jury found Sewell guilty of aggravated assault and REAP, and acquitted Sewell of one additional count of REAP. On April 22, 2019, the court sentenced Sewell to three to six years' incarceration for his aggravated assault conviction with no further penalty imposed for his REAP conviction. On that same day, Sewell filed a post-sentence motion which preserved his weight claim pursuant to Pa.R.Crim.P. 607(A). The trial court denied Sewell's post-sentence motion without a hearing on June 7, 2019. On July 3, 2019, Sewell filed a timely notice of appeal. Both Sewell and the trial court complied with Pa.R.A.P. 1925.

Sewell raises a single issue on appeal:

Where [the] police investigation was inadequate, available witnesses were not interviewed, the complainant was inconsistent in her "messed up" testimony, and the condition of the physical evidence did not comport with the complainant's testimony, did the trial court abuse its discretion in denying [] Sewell's post-sentence motion for a new trial because the verdict was against the weight of the evidence?

Appellant's Brief, at 4.

Our standard of review for a challenge to the weight of the evidence is well-settled:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

Commonwealth v. Windslowe, 158 A.3d 698, 712 (Pa. Super. 2017) (quoting Commonwealth v. Mucci, 143 A.3d 399, 410-11 (Pa. Super. 2016)). To successfully challenge the verdict as being against the weight of the evidence, a defendant must prove the evidence is 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" Mucci, 143

A.3d at 411 (quoting Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003)).  Also, "[q]uestions concerning inconsistent testimony . . . go to the credibility of witnesses."  Commonwealth v. DeJesus, 860 A.2d 102, 107 (Pa. 2004).  Indeed,

> [w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited.  Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

Commonwealth v. Fortson, 165 A.3d 10, 16 (Pa. Super. 2017) (quotation omitted).  "We will not substitute our judgment for that of the factfinder, as the jury 'is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.'"  Windslowe, 158 A.3d at 712 (quoting Commonwealth v. Talbert, 129 A.3d 536, 545 (Pa. Super. 2015)).

Here, Sewell asserts that the "Commonwealth's evidence was of such low quality, tenuous [sic], and uncertain [sic] as to make the verdict of guilty mere conjecture."  Appellant's Brief, at 23.  Sewell's weight of the evidence claim is comprised of three sub-claims.  First, Sewell states that Moore's testimony was inconsistent and she, herself, admitted that she "messed up" her testimony.  See Appellant's Brief, at 20.  Second, Sewell asserts that the Commonwealth presented no physical evidence against him.  Id. at 21-22.  Finally, Sewell claims that the Commonwealth's investigation into his case was "woefully inadequate."  Id. at 22.

Here, Sewell's argument that Moore's testimony was inconsistent does not render the jury's guilty verdict mere conjecture. Moore testified at trial that Sewell swung the knife at her twenty times and cut her seven times. See N.T. Jury Trial, 01/17/19, at 42. Moore testified that Sewell cut her on her forehead, which caused profuse bleeding, resulted in a scar, and caused Moore lasting headaches. Id. at 41-43. Officer Christopher Duncan testified that he saw blood on Sewell's hands at the time of Sewell's arrest. Id. at 68. He also testified that he found Sewell at the scene of the crime and arrested Sewell at that location. Id. at 64. Officer Michael Bender testified that he retrieved a knife in plain view on the kitchen floor near the kitchen table where the incident occurred. Id. at 74. Finally, Sergeant Snyder testified that when he arrived at the neighbor's home as a result of a 911-call, there was blood "covering" Moore's person and that blood was "everywhere" at that location. Id. at 85-86, 93. Additionally, the Commonwealth introduced into evidence medical records confirming Moore's injuries.

Sewell's second and third sub-claims implicate the sufficiency of the evidence rather than the weight of the evidence. Sewell argues that no photographs were entered into evidence, Sewell's mother was never called to testify by the Commonwealth, the neighbor and 911-caller were not called to testify, neither Sewell's sister nor the sister's friend were called to testify, no evidence was submitted to any crime laboratory, and the police investigation was "woefully inadequate." See Appellant's Brief, at 21-22. However, Sewell conceded the sufficiency of the evidence for sustaining his conviction on

- 5 -

appeal when he challenged the weight of the evidence. See Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (motion for new trial on grounds that verdict is contrary to weight of evidence concedes there is sufficient evidence to sustain verdict).

In light of the ample evidence supporting Sewell's aggravated assault and REAP convictions, the trial court's verdict did not shock the conscience. See Mucci, supra. Thus, the trial court did not commit an abuse of discretion in denying Sewell's weight claim. See Windslowe, supra.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2020